**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                              SAN JOSE DIVISION

10   IMPEVA LABS, INC.,                    CASE NO. 5:12-CV-00125-EJD

11                                         **ORDER GRANTING IN PART AND**
                                           **DENYING IN PART DEFENDANTS'**
12        v.          Plaintiff,           **MOTION TO DISMISS FIRST AMENDED**
                                           **COMPLAINT**
13   SYSTEM PLANNING CORPORATION,
     SYSTEM PLANNING CORPORATION
14   D/B/A GLOBALTRAK, AND RICHARD
     C. MEYERS,                            [Docket Item No. 23]
15
                      Defendants.
16
     _____/
17

18        Presently before the court is Defendants' Motion to Dismiss the First Amended Complaint.

19   The court found this matter suitable for decision without oral argument pursuant to Civil L.R. 7-1(b)

20   and vacated the hearing date. ECF No. 29. Having fully reviewed the moving and responding

21   papers, Defendants' motion is granted in part and denied in part for the reasons described below.

22

23                              **I.    BACKGROUND**

24        **A.    Factual Background**

25        Impeva Labs, Inc. ("Impeva") and System Planning Corporation ("SPC") were competitors

26   in the business of providing tracking systems for the containerized shipping market. GlobalTrak is a

27   wholly owned division of SPC, and Richard C. Meyers is its Chief Executive Officer. FAC ¶¶ 3–4.

28
                                           1
     Case No. 5:12-CV-00125-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST
     AMENDED COMPLAINT

In November 2009, Maersk Lines ("Maersk") initiated a Request for Proposal ("RFP") program for a Remote Container Management System. Id. ¶ 26. Prior to the issuance of the RFP, Impeva and Maersk had been discussing the potential use of Impeva's technology in certain Maersk operations. Id. In February 2010, Impeva prepared and submitted a response to Maersk's RFP. Id. In partnership with SPC, IBM also responded to Maersk's RFP. Id. ¶ 27. GlobalTrak and Meyers were also allegedly associated with the IBM response. Id.

During the period of time when Maersk was considering the submissions of Impeva and IBM, "SPC, GlobalTrak and Meyers notified Maersk that SPC owned the '784 patent and that SPC believed that the products and services that Impeva had offered to supply to Maersk under both of its Responses to the RFP would infringe one or more claims of the '784 patent owned by SPC." Id. ¶ 27. Thereafter, in March 2010, Maersk rejected both IBM's and Impeva's responses to the RFP and awarded the contract to an unknown third party. Id.

On March 26, 2010, soon after learning it had not won the contract, Impeva filed for Chapter 11 bankruptcy protection in the U.S. Bankruptcy Court for the Northern District of California. Id. ¶ 1; see Bankr. N.D. Cal. Case. No. 10-53056-ASW-11 (the "Bankruptcy Case"). Impeva is currently operating its business as debtor and debtor-in-possession under 11 U.S.C. §§ 1107 and 1108. Id. On March 31, 2010, Impeva filed a motion in the Bankruptcy Case to establish bid procedures for the sale of substantially all of its assets (the "Sale Motion"). FAC ¶ 28. Pursuant to the bid procedures, ARINC, Inc. was designated as the "stalking horse" bidder and procedures were established for other interested buyers to become qualified bidders at an auction to be held in the Bankruptcy Case (the "Auction") for Impeva's assets. Id. In response to the Auction, SPC signed a non-disclosure agreement and purported to indicate its interest in acquiring Impeva's assets. Id. SPC did not make a bid to acquire the Impeva assets in bankruptcy, but instead filed an Objection to the Sale Motion, alleging infringement of SPC's two patents, the '784 Patent and the '358 Patent, by Impeva. Id. SPC also filed a Proof of Claim on April 28, 2010, for an unspecified amount of damages resulting from the alleged patent infringement by Impeva. Id. ¶¶ 8, 28; Ex. C. Impeva alleges on information and belief that GlobalTrak and Meyers participated in the decision to file the

Case No. 5:12-CV-00125-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT

United States District Court
For the Northern District of California

proof of claims and objections. Id. ¶ 28.

At the Auction, ARINC's initial stalking horse bid of $2,000,000 was bettered by a bid of $2,200,000 by Cubic Corporation ("Cubic"). Id. ARINC, reluctant to purchase intellectual property tainted by SPC's patent infringement claim, did not submit an overbid and withdrew its bids to acquire Impeva's assets. Id. ARINC indicated in open court during the Auction that but for the patent infringement claims made against Impeva by SPC in the Proof of Claim and the Objection, ARINC would have been willing to bid $1,000,000 higher over its initial stalking horse bid for Impeva's assets. Id. ¶ 29. Because ARINC did not participate in the Auction, the bid by Cubic of $2,200,000 in cash (plus the assumption of certain liabilities) was determined to be the successful bid. Id.

On December 27, 2010, SPC amended its Proof of Claim to assert that SPC "waives any right to distribution from the Estate. However, if the Estate or any successor seeks a damage claim of any type against SPC, then SPC reserves the right to assert any defenses and counterclaims to the fullest extent possible. In the event that SPC prevails in its defenses and/or counterclaim against the Estate or any successor, then SPC will assert a claim against the Estate for distribution purposes." Id. ¶ 8, Ex. D.

**B.    Procedural Background**

Impeva filed this action on January 6, 2012. See Compl., ECF No. 1. Defendants moved to dismiss, ECF No. 13, and Impeva amended its complaint as a matter of right. ECF No. 18; see Fed. R. Civ. P. 15(a)(1)(B). In the First Amended Complaint ("FAC"), Impeva asserts ten causes of action. The first four causes of action seek declaratory relief that Impeva did not infringe the '784 and '358 patents and that SPC's '784 and '358 patents are invalid. FAC ¶¶ 10–25. The Fifth through Eighth Causes of Action are based primarily on the facts relating to the Maersk RFP. The Fifth Cause of Action pleads a violation of the Lanham Act 15 U.S.C. § 1125(a). Id. ¶¶ 32–38. The Sixth and Seventh Causes of Action are for intentional and negligent interference with prospective economic relations, id. ¶¶ 39–50, and the Eighth Cause of Action is for California common law unfair competition. Id. ¶¶ 51–57. The Ninth and Tenth causes of action are based primarily on the

United States District Court

For the Northern District of California

3

1    facts relating to the Defendants' involvement in the Bankruptcy Case. Id. ¶¶ 58–61.

2

3                              **II.   LEGAL STANDARD**

4            A complaint may be dismissed for failure to state a claim upon which relief may be granted

5    if the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell

6    Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Allegations of material fact must be taken as true

7    and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80

8    F.3d 336, 337–38 (9th Cir. 1997). However, the court need not accept as true allegations that are

9    conclusory, unwarranted deductions of fact, or unreasonable inferences. See Sprewell v. Golden

10   State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); see also Twombly, 550 U.S. at 561 ("a wholly

11   conclusory statement of [a] claim" will not survive a motion to dismiss).

12           On a motion to dismiss, the court's review is limited to the face of the complaint and matters

13   judicially noticeable. MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986); N. Star

14   Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). However, under the "incorporation

15   by reference" doctrine, the court also may consider documents which are referenced extensively in

16   the complaint and which are accepted by all parties as authentic. In re Silicon Graphics, Inc. Sec.

17   Litig., 183 F.3d 970, 986 (9th Cir. 1999).

18           Finally, although their claims arise under state law, Plaintiffs' allegations are subject to the

19   Federal Rules of Civil Procedure. Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009)

20   (quoting Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1102 (9th Cir.2003)) ("[T]he Federal Rules

21   of Civil Procedure apply in federal court, 'irrespective of the source of the subject matter

22   jurisdiction, and irrespective of whether the substantive law at issue is state or federal.' ").

23   Specifically, allegations sounding in fraud are subject to the heightened pleading requirements of

24   Fed. R. Civ. P. 9(b). See Ciba–Geigy, 317 F.3d at 1103–04 (if "the claim is said to be 'grounded in

25   fraud' or to 'sound in fraud,' [then] the pleading of that claim as a whole must satisfy the

26   particularity requirement of Rule 9(b)."); Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994)

27   (claims based in fraud "must state precisely the time, place, and nature of the misleading statements,

28

United States District Court
For the Northern District of California

                                                4

Case No. 5:12-CV-00125-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1  misrepresentations, and specific acts of fraud.").

2

3                              **III.   DISCUSSION**

4     **A.       Lanham Act Violation (Fifth Cause of Action)**

5          Section 43(a) of the Lanham Act provides:

6          (a)(1) Any person who or in connection with any goods or services, or any container
           for goods, uses in commerce any word, term . . . or any false or misleading
7          description of fact, or false or misleading representation of fact which—

8                (B) in commercial advertising or promotion, misrepresents the nature,
                 characteristics, qualities, or geographic origin of his or her or another person's
9                goods, services, or commercial activities, . . . .

10         shall be liable in a civil action by any person who believes that he or she is or is
           likely to be damaged by such act.

11

12   15 U.S.C. § 1125(a)(1) (1994). To state a claim under section 43(a), the plaintiff must allege (1) that

13   the defendants made a false or misleading statement of fact in commercial advertising or promotion

14   about the plaintiff's goods or services; (2) that the statement actually deceives or is likely to deceive

15   a substantial segment of the intended audience; (3) that the deception is material in that it is likely to

16   influence purchasing decisions; (4) that the defendants caused the statement to enter interstate

17   commerce; and (5) that the statement results in actual or probable injury to the plaintiff. Zenith

18   Electronics Corp. v. Exzec, Inc., 182 F.3d 1340, 1348 (Fed. Cir. 1999).

19         Defendants argue that Impeva's Lanham Act claim must be dismissed because "the alleged

20   assertion of a patent claim in the Maersk bid is not commercial advertising, promotion or use in

21   commercials as required under Section 43(a)" of the Lanham Act (Mot. at 14:21–23), and because

22   Impeva fails to sufficiently allege bad faith.

23                      **1.      Commercial Speech**

24         "In order to qualify as 'commercial advertising or promotion,' a representation must be: (1)

25   commercial speech; (2) by a defendant who is in commercial competition with the plaintiff; (3) for

26   the purpose of influencing consumers in purchasing defendant's goods and services; and (4)

27   disseminated sufficiently to the relevant purchasing public to constitute advertising within the

28

                                          5
     Case No. 5:12-CV-00125-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST
     AMENDED COMPLAINT

**United States District Court**
For the Northern District of California

industry. <u>Zinus Inc. v. Simmons Bedding Co.</u>, C 07-3012 PVT, 2007 WL 4287391 at *5 (N.D. Cal. Dec. 6, 2007) (citing <u>Coastal Abstract Serv. v. First Am. Title Ins. Co.</u>, 173 F.3d 725, 735 (9th Cir.1999)). Where the potential purchasers in the market are relatively limited in number, even allegations of a single promotional presentation to an individual purchaser may be enough to plead sufficient dissemination. <u>Id.</u>

In <u>Zenith</u>, for example, the Federal Circuit affirmed the denial of a motion to dismiss a Lanham Act claim based upon allegations that the patent holder made objectively baseless assertions of patent infringement in bad faith in the marketplace. <u>Id.</u> at 1347–56. Specifically, the second amended complaint in <u>Zenith</u> alleged that "Elo Touch falsely stated to its licensees, which were potential customers of Exzec, that Exzec's shear touch technology infringed Zenith's SAW patents . . . [and] that Exzec could not manufacture and/or sell an acoustic touch panel or system which did not infringe Zenith's SAW patents." <u>Id.</u> at 1343. Likewise, in <u>Zinus</u>, defendant Simmons sent a cease-and-desist letter to Wal-Mart, one of plaintiff Zinus's customers, stating that Zinus's product infringed on its patent. <u>Zinus</u>, 2007 WL 4287391 at *1. Applying <u>Coastal Abstract Serv.</u>, the court held that the cease-and-desist letter was commercial speech. <u>Id.</u> at *6.[1]

Defendants argue that Impeva's claims in this case are unlike the ones asserted in <u>Zenith</u> because the alleged representations here "were not to potential customers but part of a bid process," which "is not the marketplace context required under the Lanham Act." Reply at 5:16–24. This is a false distinction. In the marketplace context envisioned by Defendants, there must be one potential seller and many potential buyers. But an RFP—in which, by nature, there is one potential buyer and many potential sellers—creates no less of a commercial marketplace.[2]

Here, the FAC alleges that Defendants notified Maersk, a potential customer of Impeva, that the products and services that Impeva had offered to supply to Maersk would infringe their '784

---

[1] However, the court dismissed Zinus's claim because the amended complaint did not allege that the purpose of the letter was to influence Wal-Mart to buy Simmons' product. <u>Id.</u> at *6.

[2] This "one buyer, many seller" characteristic of an RFP also explains why Defendants' single statement constitutes "sufficient dissemination." <u>Accord</u> <u>Coastal Abstract Serv.</u>, 173 F.3d at 735.

Case No. 5:12-CV-00125-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    patent. FAC ¶ 27. Like the cease-and-desist letter in <u>Zinus</u> and the statements to licensees in <u>Zenith</u>,

2    Defendants' notice to Maersk is commercial speech made by a defendant in competition with the

3    plaintiff.[3] <u>See</u> <u>Zinus Inc.</u>, 2007 WL 4287391 at *5. The FAC further alleges that Maersk received

4    Defendants' notice while it was considering competing proposals from Impeva and Defendants.

5    FAC ¶ 27. These facts are sufficient for the court to draw the plausible inference that Defendants'

6    notice was given for the purpose of influencing Maersk to purchase Defendants' goods and services

7    instead of Impeva's. See <u>id.</u>

8                    **2.        Specificity of Bad Faith Allegation**

9         Before "a patentee may be held liable under § 43(a) for marketplace activity in support of its

10   patent, and thus be deprived of the right to make statements about potential infringement of its

11   patent, the marketplace activity must have been undertaken in bad faith." <u>Zenith Electronics Corp.</u>,

12   182 F.3d at 1353. "Exactly what constitutes bad faith remains to be determined on a case by case

13   basis." <u>Id.</u> at 1354.

           "Obviously, if the patentee knows that the patent is invalid, unenforceable, or not
14         infringed, yet represents to the marketplace that a competitor is infringing the patent,
           a clear case of bad faith representations is made out. Furthermore, statements to the
15         effect that a competitor is incapable of designing around the patent are inherently
           suspect."
16

17   <u>Id.</u> Defendants argue that Impeva's Lanham Act claim fails because the allegation of bad faith in the

18   FAC is conclusory. Mot. at 9:15–19.

19        It is not settled whether claims under § 43(a)(1)(B) are always subject to the special pleading

20   requirements of Fed. R. Civ. P. 9(b), <u>see</u> <u>EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.</u>,

21   711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010), but the allegations here are sufficient even under that

22   stricter standard. Impeva alleges that Defendants' patent infringement accusations were made in bad

23   faith since they had "knowledge . . . that Impeva did not directly or indirectly infringe any valid

24   claim of the '784 patent because at a minimum plaintiff Impeva's products did not have a satellite

25

26        [3] According to the FAC, IBM was one of the parties who responded to Maersk's RFP. FAC
     ¶ 27. IBM allegedly "had partnered with SPC, with SPC taking a sub-contractor role to IBM, similar
27   to the arrangement that had been made between Tata Group and plaintiff Impeva." <u>Id.</u> Thus, the
     FAC has provided enough facts to show that Defendants were in competition with Impeva during
28   their alleged conduct.

Case No. 5:12-CV-00125-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

transceiver elements (or equivalent device) located physically outside the closed container as required by the '784 patent claims." FAC ¶ 35. Defendants complain that the allegations of Defendants' knowledge of the falsity are conclusory, but Rule 9(b) specifically provides that "knowledge[] and other conditions of a person's mind may be alleged generally." The nature of the falsity is explained with particularity: the location of the satellite transceiver in Impeva's products is allegedly inconsistent with the requirements of SPC's patent. This is enough information to establish bad faith for the purposes of a motion to dismiss. Thus, Defendants' motion to dismiss Impeva's Lanham Act claim is denied.[4]

### B.   Intentional Interference With Prospective Economic Relations (Sixth Cause of Action)

Under California law, the tort of intentional interference with a prospective economic relationship requires a plaintiff to allege facts that, if true, would plausibly prove: (1) an economic relationship between the plaintiff and a third party with the probability of future economic benefit to plaintiff, (2) defendant's knowledge of the relationship, (3) a wrongful act by defendant intended to disrupt the relationship, (4) actual disruption, and (5) economic harm to plaintiff. <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1154 (2003).

Wrongfulness sufficient to state a claim for tortious interference must be distinct from the interference itself. <u>Della Penna v. Toyota Motor Sales, U.S.A., Inc.</u>, 11 Cal. 4th 376, 393 (1995). An act "is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." <u>Korea Supply</u>, 29 Cal. 4th at 1159. Moreover, because companies are privileged to compete with one another, it is the plaintiff's burden to allege that the purported wrongful act was not privileged. <u>Bed, Bath & Beyond</u>

---

[4] Defendants also challenge Impeva's Lanham Act claim based on the California litigation privilege, which bars suits based on actions a litigant has taken in court. <u>Silberg v. Anderson</u>, 50 Cal. 3d 205, 214 (1990). However, a state absolute litigation privilege purporting to confer immunity from suit cannot defeat a federal cause of action. <u>See Kimes v. Stone</u>, 84 F.3d 1121, 1127 (9th Cir. 1996) (holding that the California absolute litigation privilege does not immunize attorneys from liability under 42 U.S.C. § 1983); <u>see also Martinez v. California</u>, 444 U.S. 277, 284 n.8 (1980) (holding that § 1983 preempts a state statute purporting to immunize public employees from liability for parole release decisions); <u>Scheib v. Grant</u>, 22 F.3d 149 (7th Cir. 1994), <u>cert. denied</u>, 513 U.S. 929 (1994) (applying the Illinois absolute litigation privilege to a wiretapping claim under state law, but not to a federal claim arising from the same incident).

Case No. 5:12-CV-00125-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT

of La Jolla, Inc. v. La Jolla Vill. Square Venture Partners, 52 Cal. App. 4th 867, 880-81 (1997).

Defendants argue that Impeva's intentional interference claim does not adequately plead the Korea Supply-type wrongful conduct because the FAC does not allege facts indicating bad faith. Mot. at 9:3–28. As discussed previously, Impeva has sufficiently pleaded bad faith in regards to Defendants' patent infringement accusations. Therefore, Impeva's Lanham Act allegations satisfy the Korea Supply wrongful conduct requirements.

Alternatively, Defendants contend that Impeva's intentional interference claim fails because the FAC does not give rise to a plausible inference of causation. Mot. at 11:8–10. Specifically, Defendants assert that the FAC does not offer support to show Impeva would have won the bid on the Maersk contract were it not for Defendants' conduct. Mot at 11:13–14. They observe that "the FAC does contain factual support for the far more plausible explanation that [Impeva's] incipient insolvency doomed its bid." Mot at 11:24–12:2.

The FAC alleges generally that "the reason that Maersk did not award the contract to plaintiff Impeva was because of defendants' improper and unlawful allegations of patent infringement made in bad faith to Maersk in 2010." FAC ¶ 43. This allegation read together with the facts about the RFP process found in paragraphs 26 and 27 of the FAC provide enough of a basis for the court to draw the reasonable inference that the Defendants' conduct caused Impeva's injury. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Of course, Defendants' explanation is plausible, too.

Finally, Defendants argue that the court should dismiss Impeva's intentional interference claim because the FAC fails to show an economic relationship with a third party that was reasonably likely to produce a future benefit. Reply at 6:17–20. Defendants cite to Westside Center Associates v. Safeway Stores 23, Inc., 42 Cal. App. 4th 507, 528 (1996), and Roth v. Rhodes, 25 Cal. App. 4th 530, 546 (1994), in support of their position. Westside and Roth hold that the plaintiff must show harm to some existing business relationship rather than a nebulous injury in the marketplace or interference with the plaintiff's opportunities with future, unspecified parties. Westside, 42 Cal. App. 4th at 519; Roth, 25 Cal. App. 4th at 545–46. But here, the FAC alleges that prior to the Defendants' wrongful conduct, Impeva had engaged in business discussions with Maersk and had

Case No. 5:12-CV-00125-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT

United States District Court
For the Northern District of California

submitted a response to Maersk's RFP. FAC ¶ 27. These allegations, taken as true, sufficiently plead an existing business relationship between Impeva and Maersk.

The court DENIES Defendants' motion to dismiss Impeva's intentional interference claim.

**C.  Negligent Interference With Prospective Economic Relations (Seventh Cause of Action)**

The elements of negligent interference with a prospective economic relationship under California law differ slightly from the intentional version of the tort. For negligent interference, wrongful conduct as defined by <u>Korea Supply</u> is still required.[5] <u>Hsu v. OZ Optics Ltd.</u>, 211 F.R.D. 615, 621 (N.D. Cal. 2002) (citing <u>Lange v. TIG Ins. Co.</u>, 68 Cal. App. 4th 1179, 1187 (1998)). But in place of the intentional conduct requirement, the plaintiff must show that the defendant owed the plaintiff a duty of care which was breached by the defendant's negligent conduct. <u>See</u> <u>J'Aire Corp. v. Gregory</u>, 24 Cal. 3d 799, 803 (1979); <u>Hsu</u>, 211 F.R.D. at 621.

Defendants argue that "the FAC makes no attempt to allege facts that could possibly give rise to a conclusion that Defendants owed [Impeva] a duty of care." Mot. at 12:24–13:3. In its opposition to the motion to dismiss, Impeva does not dispute that the FAC does not allege a duty of care, but argues instead that Defendants' conduct falls outside of the competition privilege. Opp'n at 5:3–10.

It is the plaintiff's burden to state a claim on which relief can be granted. The existence of a duty is necessary to the maintenance of a negligent interference claim. Whatever the competition privilege is, and whether or not it embraces Defendants' conduct, it does not excuse Impeva from pleading facts to support its claims. Because the FAC does not establish the existence of a duty of care, the negligent interference cause of action fails to meet the Rule 8 pleading standard. Moreover, since the FAC makes clear that Defendants, as direct competitors to Impeva, owed Impeva no duty of care, the court GRANTS Defendants' motion to dismiss Impeva's negligent interference claim with prejudice.

**D.  Unfair Competition (Eighth Cause of Action)**

---

[5] Because Impeva's negligent interference claim is based on the same alleged conduct in Impeva's intentional interference claim, the FAC sufficiently pleads wrongful conduct.

Case No. 5:12-CV-00125-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1    Defendants contend that Impeva does not state a valid claim of unfair competition pursuant

2   to California common law because this tort does not apply to the situation alleged in the FAC. Mot.

3   13:10–19. The common law tort of unfair competition is generally thought to be synonymous with

4   the act of "passing off" one's goods as those of another. Bank of the West v. Superior Court, 2 Cal.

5   4th 1254, 1262 (1992). The tort developed as an equitable remedy against the wrongful exploitation

6   of trade names and common law trademarks that were not entitled to legal protection. Id. According

7   to some authorities, the tort also includes acts analogous to "passing off," such as the sale of

8   confusingly similar products, by which a person exploits a competitor's reputation in the market. Id.

9   Here, there are no allegations that Defendants attempted to pass off their goods as Impeva's,

10  therefore, the FAC fails to state a cognizable claim under common law unfair competition. Thus, the

11  court GRANTS Defendants' motion to dismiss Impeva's unfair competition claim with leave to

12  amend.

13       **E.    Judicial Order to Preserve the Integrity of the Bankruptcy Process (Ninth Cause of Action)**

14       In its Ninth Cause of Action, Impeva alleges that Defendants defied the integrity of the

15  bankruptcy process when they filed their Proof of Claim and Objection on the eve of the Auction

16  without any factual support attached to their claim. FAC ¶ 59. Moreover, Defendants allegedly filed

17  this claim knowing Impeva did not infringe either of their patents. Id. Defendants argue that

18  Impeva's judicial order claim should be dismissed because it is unclear and not a valid cause of

19  action. Mot. at 20:12–17. Impeva's opposition does not provide any case law or authority which

20  permits it to bring a claim for a judicial order to preserve the integrity of the bankruptcy process.

21       Under Section 105, Congress has endowed the courts with broad powers to enforce the

22  provisions of the bankruptcy title. 11 U.S.C. § 105(a) (2010). Although, Section 105 provides the

23  courts with broad powers to grant relief, it does not allow the courts to establish new substantive

24  rights. Malone v. Norwest Fin. California, Inc., 245 B.R. 389, 394 (E.D. Cal. 2000). Rather, a court

25  can exercise the power granted by section 105 only to further existing substantive rights. See Matter

26  of Oxford Mgmt., Inc., 4 F.3d 1329, 1333–34 (5th Cir. 1993). Here, the FAC claims that the

27  Defendants harmed the integrity of bankruptcy process by filing their Proof of Claim and Objection

28

Case No. 5:12-CV-00125-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT

United States District Court

For the Northern District of California

1  without any factual support attached to their claim on the eve of the bidding for Impeva's assets.

2  FAC ¶ 59. The FAC, however, does not point to any authority showing that Defendants' conduct

3  violated bankruptcy court procedures. Unless Impeva can indicate a specific violation of the

4  bankruptcy laws, there is no substantive right for the court to protect. Thus, the court GRANTS

5  Defendants' motion to dismiss Impeva's Ninth Cause of Action.

6          **F.**       **Fraud on the Court (Tenth Cause of Action)**

7        Similar to its Ninth Cause of Action, Impeva alleges that Defendants committed fraud on the

8  court by filing the Proof of Claim and the Objection to the Sale Motion in the Bankruptcy Case.

9        Fraud on the court includes "only that species of fraud which does or attempts to, defile the

10  court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not

11  perform in the usual manner its impartial task of adjudging cases that are presented for

12  adjudication." In re Intermagnetics Am., Inc., 926 F.2d 912, 916 (9th Cir. 1991). In determining

13  whether conduct constitutes fraud on the court, the relevant inquiry is not whether fraudulent

14  conduct prejudiced the opposing party, but whether it harmed the integrity of the judicial process.

15  United States v. Estate of Stonehill, 660 F.3d 415, 444 (9th Cir. 2011). "Generally speaking, only

16  the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of

17  evidence by a party in which an attorney is implicated, will constitute a fraud on the court. Less

18  egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter

19  before it, will not ordinarily rise to the level of fraud on the court." United States v. Int'l Telephone

20  & Telegraph, 349 F. Supp. 22, 29 (D. Conn. 1972).

21        Here, Impeva is essentially arguing that filing a baseless proof of claim or objection is

22  sufficient to support a cause of action for fraud on the court. Filing a baseless claim, like failing to

23  disclose evidence, is a wrong that the judicial machinery is designed to handle. The reason the courts

24  do not treat nondisclosure alone as fraud on the court is because the plaintiff usually has the

25  opportunity to challenge the nondisclosure. In re Levander, 180 F.3d at 1120. Likewise, Impeva has

26  availed itself of opportunities to challenge Defendants' filings: for example, it responded to the

27  Objection, see Bankruptcy Case Dkt. No. 85; objected to Defendants' Claim, see Bankruptcy Case

28

Case No. 5:12-CV-00125-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT

United States District Court

For the Northern District of California

1   Dkt. No. 175; and moved to disallow the claim, see Bankruptcy Case Dkt. No. 222. Considering the

2   Ninth Circuit's narrow reading of fraud on the court and the fact that Impeva had the opportunity to

3   challenge Defendants' allegedly fraudulent acts, Impeva's allegations do not sufficiently plead fraud

4   on the court. Thus, the court GRANTS Defendants' motion to dismiss Impeva's Tenth Cause of

5   Action.

6           **G.      Preemption of State Law Claims (Sixth, Seventh, and Eighth Causes of Action)**

7           To support its Sixth through Eighth Causes of Action, Impeva re-alleges under each of the

8   three claims the allegations concerning SPC's improperly filed Proof of Claim. FAC ¶¶ 28–31.

9   Defendants argue,

10          [T]o the extent that [Impeva's] state law claims are based on SPC's actions in the
            bankruptcy proceedings, such are preempted by federal bankruptcy law. That is,
11          [Impeva's] claim for tortious interference (6th and 7th Causes of Action) and under
            California's unfair competition law (8th Cause of Action) must be dismissed to the
12          extent they are premised upon SPC's actions in the bankruptcy proceedings.

13   Mot. at 21:8–10. Impeva does not address this issue in its opposition.

14          The Ninth Circuit has "jealously guard[ed] the bankruptcy process from even slight

15   incursions and disruptions brought about by state . . . actions." MSR Exploration, Ltd. v. Meridian

16   Oil, Inc., 74 F.3d 910, 914 (9th Cir. 1996). The Constitution's command to create uniform

17   bankruptcy law, along with Congress's decision to create exclusive jurisdiction in federal courts and

18   specific remedies for bankruptcy litigation misconduct demonstrate that Congress intended federal,

19   not state, law to govern. Id. at 913–16. Courts following the Ninth Circuit's approach have

20   recognized that claims for tortious interference and under California's Unfair Competition Law

21   ("UCL"), Cal. Bus. & Prof. Code § 17200, similarly intrude into the Bankruptcy Code's delicate

22   balance and dismissed such claims. In re Pac. Gas & Elec. Co., 281 B.R. 1, 7–11 (Bankr. N.D. Cal.

23   2002) (UCL); Rogers v. NationsCredit Fin. Servs. Corp., 233 B.R. 98, 109–10 (Bankr. N.D. Cal.

24   1999) (UCL); Raymark Indus., Inc. v. Baron, No. CIV. 96-7625, 1997 WL 359333, at *9–11 (E.D.

25   Pa. June 23, 1997) (tortious interference); PNH v. Alfa Laval, Inc., 940 N.E.2d 577, 586–89 (Ohio

26   2010) (tortious interference).

27          Therefore, the FAC's Sixth, Seventh, and Eighth Causes of Action must be dismissed insofar

28

Case No. 5:12-CV-00125-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT

as they challenge SPC's actions in Impeva's bankruptcy proceedings. Nevertheless, as noted above, Impeva's sixth claim survives Defendants' motion to dismiss to the extent it does not rely on the allegations in paragraphs 28–31 of the FAC. Because the court finds that the FAC's Sixth through Eighth Causes of Action are preempted insofar as they challenge SPC's actions in Impeva's bankruptcy proceedings, it need not address Defendants' argument that the California litigation privilege also precludes causes of action based on actions taken in the Bankruptcy Case.

### H.  Judicial Estoppel Regarding Maersk-Based Claims

Additionally, Defendants argue that the FAC's claims relating to the Maersk RFP allegations are barred by the doctrine of judicial estoppel because Impeva failed to disclose its claims against Defendants at the outset of the bankruptcy proceeding. Mot. at 22:25–23:2. Impeva argues that judicial estoppel does not apply to bar its RFP-related claims because (1) Impeva has amended its bankruptcy court schedule of assets and (2) the bankruptcy court has not taken any action based upon Impeva's previous omission of the Maersk-based claims. Opp'n at 10:1–4.

"Judicial estoppel . . . precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." Rissetto v. Plumbers & Steamfitters Local 342, 94 F.3d 597, 600 (9th Cir. 1996). Judicial estoppel can apply when parties assert one position to the bankruptcy court and a different position to another tribunal, and specifically when a debtor tries to sue on a claim it did not identify in prior bankruptcy proceedings. Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 783 (9th Cir. 2001). In determining whether to apply the doctrine of judicial estoppel, the courts consider three factors. First, whether a party's later position is clearly inconsistent with its earlier position. New Hampshire v. Maine, 532 U.S. 742, 750 (2001). Second, whether the party has succeeded in persuading a court to accept the party's earlier position. Id. "Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations . . . ." Id. at 750–51 (internal citation and quotations omitted). "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 751.

Case No. 5:12-CV-00125-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

According to the FAC, the facts supposedly giving rise to the Maersk-related allegations occurred soon before Impeva's voluntary petition. FAC ¶¶ 26–28. Thus, Impeva had knowledge of this purported claim at the time of the bankruptcy filing or very soon thereafter, requiring Impeva to list the claim as an asset. Initially, Impeva did not list this claim in its schedule B. See In re Impeva Labs, Inc., No. 10-53056-ASW-11, ECF No. 1. However, after Defendants filed their first motion to dismiss, Impeva filed an amended Schedule B, which now lists Impeva's claims against Defendants. See id., No. 10-53056-ASW-11, ECF No. 357. Currently, in the Bankruptcy Case, no plan of liquidation has been filed and no discharge of debt or distribution of assets has occurred. Therefore, Impeva has not succeeded in persuading the bankruptcy court to accept its previous position.[6] See Hamilton, 270 F.3d at 783–84. Furthermore, in their moving papers the Defendants have not identified any unfair advantage or unfair detriment deriving from Impeva's inconsistent positions. See id. at 738. Thus, the FAC's Maersk-based claims are not barred by the doctrine of judicial estoppel.

## I.        Claims Against Richard Meyers

Defendants also argue that Impeva's claims against Meyers should be dismissed because the FAC "has not alleged one single fact attributing conduct to Mr. Meyers." Mot. at 19:21–23. Specifically, Defendants contend that the "FAC does no more than tack Mr. Meyers' name onto a list of alleged actors without providing any reason why the purported conduct is attributable to Mr. Meyers individually." Id. at 19:26–28.

Under California law, "[d]irectors and officers of a corporation are not rendered personally liable for its torts merely because of their official positions, but may become liable if they directly ordered, authorized or participated in the tortious conduct." Wyatt v. Union Mortgage Co., 24 Cal. 3d 773, 785 (1979). Similarly, an officer or director accused of a Lanham Act violation may become personally liable if he authorized, directed, or participated in the tortious conduct. See Coastal Abstract Serv., 173 F.3d at 734. Here, the FAC does not provide any specific allegations that relate

---

[6] In Hamilton, the Ninth Circuit added that grounds other than discharge may qualify as a basis for judicial estoppel, such as the lifting of a stay or approval of a plan of reorganization, neither of which are applicable here. 270 F.3d at 784.

Case No. 5:12-CV-00125-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT

to the actions of Meyers. Instead, the FAC merely inserts Meyers' name along with that of

defendants SPC and GlobalTrak in the causes of action. The FAC also alleges generally that

"Meyers participated in, authorized and committed the tortuous conduct that gives rise to the Fifth

through Ninth Causes of Action . . . ." FAC ¶ 4. These allegations alone do not proffer enough facts

to show Meyers is individually responsible for the Fifth through Ninth Causes of Action. Thus, the

court GRANTS Defendants' motion to dismiss all remaining claims against Meyers with leave to

amend.

**J.     Declaratory Judgment Claims (First, Second, Third, and Fourth Causes of Action)**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its

jurisdiction . . . any court of the United States, upon filing of an appropriate pleading, may declare

the rights and other legal relations of any interested party seeking such declaration, whether or not

further relief is or could be sought." 26 U.S.C. § 2201(a). However, there "is no absolute right to a

declaratory judgment, for the statute specifically entrusts courts with discretion to hear declaratory

suits or not depending on the circumstances." Serco Servs. Co. v. Kelley Co., 51 F.3d 1037, 1039

(Fed. Cir. 1995). Judicial discretion to hear a declaratory judgment action should be grounded in the

purposes of the Declaratory Judgment Act and considerations of wise judicial administration,

including an evaluation of whether the investment of court time and resources would be worthwhile.

Sony Elecs., Inc. v. Guardian Media Techs., Ltd., 497 F.3d 1271, 1288 (Fed. Cir. 2007); Serco

Servs., 51 F.3d at 1039.

"In promulgating the Declaratory Judgment Act, Congress intended to prevent avoidable

damages from being incurred by a person uncertain of his rights and threatened with damages by

delayed adjudication." Minn. Mining & Mfg. Co. v. Norton Co., 929 F.2d 670, 673 (Fed. Cir. 1991).

Before the Declaratory Judgment Act, a patent owner could render its competitor helpless and

immobile by not suing and allowing the competitor's liability to grow. Sony Elecs., 497 F.3d at

1285. After the enactment of the Declaratory Judgment Act, "competitors were no longer restricted

to an *in terrorem* choice between the incurrence of a growing potential liability for patent

infringement and abandonment of their enterprises; they could clear the air by suing for a judgment

16

United States District Court

For the Northern District of California

1    that would settle the conflict of interests." <u>Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.</u>, 846

2    F.2d 731, 735 (Fed. Cir. 1988).

3         Here, Defendants' patent infringement allegations relate to Impeva's conduct before the

4    Bankruptcy Case, not any present or future conduct. Impeva is not incurring any additional potential

5    liability based on its previous actions because Impeva has sold all its assets and does not plan to

6    resume its previous business. <u>In re Impeva Labs, Inc.</u>, No. 10-53056-ASW-11, ECF No. 347

7    (Question 8). Because there is no risk that Impeva's liability will grow if Defendants choose not to

8    sue or are unable to sue at this time, one of the animating policies behind the Declaratory Judgment

9    Act is neutralized in this case.

10        Moreover, deciding Impeva's declaratory judgment claims at this time would improvidently

11   expend the resources of the court. In the usual patent declaratory judgment action, the accused

12   infringer asks for a declaratory judgment of noninfringement or invalidity, and the patentee

13   counterclaims for patent infringement. Here, however, the court would not be able to hear

14   Defendants' counterclaims until the conclusion of the Bankruptcy Case.[7] The parties and the court

15   would have to prepare for and try the questions of invalidity and noninfringement without being able

16   to simultaneously decide infringement. To conserve resources, the court declines to hear the

17   declaratory judgment action until Impeva's claims and Defendants' counterclaims can be litigated

18   together.

19        For the reasons described above, Defendants' motion to dismiss Impeva's declaratory

20   judgment claims is granted without prejudice to their being refiled at a later date.

21

22

23        [7] Under 11 U.S.C. § 362(a)(1), the commencement of an judicial action against a debtor is
     automatically stayed unless it falls within one of the enumerated exceptions. Aside from the limited
24   exceptions in 11 U.S.C. § 362(b), the automatic stay provision applies "to almost any type of formal
     or informal action against the debtor or property of the estate." <u>In re Miller</u>, 397 F.3d 726, 730–31
25   (9th Cir. 2005) (quoting <u>Stringer v. Huet</u> (<u>In re Stringer</u>), 847 F.2d 549, 552 n.4 (9th Cir. 1988)).
     Even in a case when the debtor is a plaintiff, defendant's counterclaims are still subject to the
26   automatic stay. <u>See, e.g.</u>, <u>In re Miller</u>, at 731–33; <u>see also</u> <u>In re Lessig Const., Inc.</u>, 67 B.R. 436,
     443–44 (Bankr. E.D. Pa. 1986) (the automatic stay applies to counterclaims against the plaintiff
27   debtor even where the claimant merely seeks a setoff against plaintiff's claim). Therefore, in the
     present case, Defendants' potential counterclaims against Impeva are subject to the automatic stay
28   rule, and the court would not begin to hear them until the conclusion of the Bankruptcy Case.

Case No. 5:12-CV-00125-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

## IV.   ORDER

For good cause shown, IT IS HEREBY ORDERED THAT:

1)   Defendants' motion to dismiss the First through Fourth Causes of Action is GRANTED without prejudice to the refiling of the claims at a later date;

2)   Defendants' motion to dismiss the Fifth Cause of Action is DENIED;

3)   Defendants' motion to dismiss the Sixth Cause of Action is GRANTED to the extent the Sixth Cause of Action relies on actions taken by the Defendants in the Bankruptcy Case, and DENIED in all other respects;

4)   Impeva's Seventh Cause of Action is DISMISSED WITH PREJUDICE;

5)   Impeva's Eighth, Ninth, and Tenth Causes of Action are DISMISSED WITH LEAVE TO AMEND;

6)   all remaining claims against Richard Meyers are DISMISSED WITH LEAVE TO AMEND; and

7)   any amended complaint shall be filed within 14 days of the date of this order.

**IT IS SO ORDERED.**

Dated: August 23, 2012

_____
EDWARD J. DAVILA
United States District Judge

Case No. 5:12-CV-00125-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT